AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Unknown Target Telephone A, more fully described in Attachment A

Case No. MJ19-159

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Unknown Target Telephone A, more fully described in Attachment A, incorporated herein by reference.

located in the Western District of Washington, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1956<br>18 U.S.C. § 841 and 846 | Money laundering; distribution of controlled substances; and conspiracy to distribute controlled substances |

The application is based on these facts:

✓ See Affidavit in Support of an Application for a Search Warrant. To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. See attachment C for AUSA certification.

☑ Delayed notice of ___ days (give exact ending date if more than 30 days: 07/17/2019 is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☑ by reliable electronic means; or: ☐ telephonically recorded.

[signature]
*Applicant's signature*

Alison Wassall, Special Agent
*Printed name and title*

○ The foregoing affidavit was sworn to before me and signed in my presence, or
◉ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: 04/18/2019

[signature]
*Judge's signature*

City and state: Seattle, Washington

Brian A. Tsuchida, United States Magistrate Judge
*Printed name and title*

USAO: 2019R00130

**AFFIDAVIT OF ALISON WASSALL**

STATE OF WASHINGTON )
)
COUNTY OF KING )

I, Alison Wassall, a Special Agent with the Drug Enforcement Administration, having been duly sworn, state as follows:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am employed as a Special Agent (SA) with the United States Drug Enforcement Administration (DEA), and have been so employed since September, 2018. I am currently assigned to the Seattle Field Division. In this capacity, I investigate violations of the Controlled Substance Act, Title 21, United States Code, Section 801 et seq., and related offenses. I have received specialized training in the enforcement and investigation of the Controlled Substance Act. I have received over 620 hours of classroom and practical training which includes, but is not limited to, drug identification, drug interdiction, detection, money laundering techniques and schemes, smuggling, and the investigation of individuals and/or organizations involved in the illegal possession, possession for sale, sales, importation, smuggling, cultivation, manufacturing and illicit trafficking of controlled substances.

2. In my role as a Special Agent for the Drug Enforcement Administration, I have participated in narcotics investigations (i.e. heroin, cocaine, marijuana, and methamphetamine) which have resulted in the arrest of individuals and the seizure of illicit narcotics and/or narcotic-related evidence. Through my training and experience, I can identify illegal drugs by sight, odor, and texture. Additionally, I have written investigative reports, and conducted and participated in interviews of drug traffickers, of various roles within drug organizations, which has provided me with a greater understanding of the methods by which drug trafficking organizations operate.

3. Prior to becoming a Drug Enforcement Administration Special Agent, I was employed by the Washington State Patrol, assigned to the Northwest High Intensity

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Drug Trafficking Area in Seattle, Washington, as a Criminal Intelligence Analyst for approximately three (3) years. I received specialized training from the Drug Enforcement Administration Basic Intelligence Research Specialist academy and received over 350 hours of classroom training. During my time as an analyst, I supported numerous state and federal drug trafficking cases, assisted with the execution of both state and federal search warrants, and was a participant with the Washington State Patrol Marijuana Eradication Team. As a result of my experience in participating in search warrants as an analyst, I have encountered and have become familiar with various tools, methods, trends, paraphernalia and related articles utilized by various traffickers in their efforts to import, conceal, and distribute controlled substances. I am also familiar with the various methods of packaging, delivering, transferring.

## II. PURPOSE OF THIS AFFIDAVIT

### Search Warrant to Authorize Electronic Investigative Technique

4. This affidavit supports an application for a search warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to employ an electronic investigative technique further described in Attachment B, in order to identify the cellular phone or phones carried by Darren Singh (hereinafter referred to as "**Unknown Target Telephone A**," or "**TTA**") described in Attachment A.

5. This Court has authority to issue the requested warrant under Federal Rule of Criminal Procedure Rule 41(b)(1) & (2) because The Target Telephone is currently believed to be located inside this District. In order to obtain additional information relating to **Unknown Target Telephone A**, its user, and the criminal violations under investigation, law enforcement must first identify **TTA**. There is probable cause to believe that the use of the investigative technique described by the warrant will result in investigators learning that identifying information.

6. I believe **TTA** is presently being used in the Western District of Washington in furtherance of the following federal criminal offenses: Money laundering of drug trafficking proceeds and conspiracy to launder money, in violation of 18 U.S.C.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

§§ 1956; and Distribution of Controlled Substances, in violation of 21 U.S.C. § 841(a)(1), and/or conspiracy to commit that same offense in violation of 21 U.S.C. § 846. I believe that identification of **TTA** will further the investigation of these violations.

7. Because this affidavit is being submitted for the limited purpose of obtaining the authorization mentioned above**,** I have not included every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary for a fair determination of probable cause and to show that there is probable cause to issue the requested warrant.

8. This is the first application in this judicial District for a warrant authorizing use of this electronic investigative technique in connection with this investigation.

9. Because collecting the information authorized by this warrant may fall within the statutory definitions of a "pen register" or "trap and trace device" *see* 18 U.S.C. § 3127(3) & (4), this warrant is designed to comply with the Pen Register Statutes as well as Rule 41. See 18 U.S.C. § § 3121-3127. This warrant therefore includes all the information required to be included in a pen register order. See 18 U.S.C. § 3123(b)(1). I know from my training and experience that a pen register is a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted. The information obtained from a pen register does not include the contents of any communication. I know from my training and experience that a trap and trace device is a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication, provided, however, that such information does not include the contents of any communication.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## III. SOURCES OF INFORMATION

10. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from oral and written reports of other law enforcement officers; and from records, documents and other evidence obtained during this investigation. I have obtained and read official reports prepared by law enforcement officers participating in this investigation and in other investigations by the DEA. When I refer to registration records for vehicles, I am relying on records obtained from that state's Department of Licensing (DOL) or equivalent. Insofar as I have included event times in this affidavit, those event times are approximate.

## IV. PROBABLE CAUSE

### A. MDMA Seizure

11. During December 2018, a confidential source (CS1) stated he/she was aware of a narcotics trafficker selling large quantities of MDMA in Western Washington. CS1 identified the narcotics trafficker to investigators as Darren Singh. CS1 stated to investigators that Singh generally has access to ten kilograms of MDMA at any given time. CS1 also provided (253) 226-1137 (hereinafter "Target Telephone 2" or "TT2") as a contact number for Singh. CS1 knows this information because he/she stated to investigators he/she had spoken with Singh in the past on TT2.

12. CS1 was recently arrested on a state narcotics violation and is cooperating with investigators under an active cooperation agreement with Seattle Police Department in exchange for charging considerations. In addition to the recent narcotics arrest, a criminal history check revealed CS1 has an arrest history which includes a felony narcotics arrest from 2018[1], and from before 2017. Per his/her criminal history, one of the aforementioned felony narcotics arrests, in 2017, resulted in a gross misdemeanor conviction for solicitation to commit a violation of the uniformed controlled substances

[1] As of the submission of this affidavit, per CS 1's criminal history, no disposition has been received for the 2018 arrest.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

act[2]. CS1 also has arrests for possession of a stolen firearm and attempting to elude, both from before 2015. No charges were filed for either arrest.

13. During December 2018, at the direction of law enforcement, a recorded phone call was placed from CS1 to TT2, believed to be utilized by Singh. Other investigators were present when the call was made, however I subsequently reviewed the recording. During the phone call, a male answered TT2, who CS1 stated he/she knew to be Singh based on past in person and telephonic conversations and in person meetings he/she had with Singh. CS1 acted as a third party broker during the call. CS1 indicated to Singh that he/she had "guys" who wanted to "come down and make this happen." CS1 inquired about Singh's availability, and trying to set "it" up for a weekend. Singh inquired to CS1, "They want three you said?" CS1 replied they wanted "three or five" but that CS1 was trying to work it out. Singh replied, "Ok no problem."

14. Based on my training and experience, and the training and experience of other investigators more senior than I, I believe when CS1 was inquiring about Singh's availability and stated to Singh he/she had "guys" who wanted to "come down and make this happen" in addition to trying to set "it" (or the meeting) up for a weekend, Singh knew CS1 to be referring to a narcotics transaction with customers CS1 would be directing to Singh. I also believe when Singh inquired if the customers wanted "three or five" he was asking CS1 if the customers wanted three or five kilograms of a narcotics substance, in this instance MDMA. CS1 stated to investigators that Singh generally has access to 10 kilograms of MDMA at any given time. In addition, CS1 has stated to investigators that he/she and Singh have conducted numerous narcotics transactions over the last several years. CS1 further had stated that he/she has purchased up to several kilograms of MDMA from Singh.

[2] In two previous affidavits in this investigation, only CS1's arrest history is discussed, however after I reviewed his/her criminal history one of these drug arrests resulted in the conviction mentioned above.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

15. On December 21, 2018, King County Superior Court Judge Patrick Oishi signed a state tracking warrant authorizing the real time GPS location tracking of TT2. Initial state tracking data for TT2 showed the phone was located near 6900 132nd PL SE, Newcastle, WA[3]. According to Washington Department of Licensing (WA DOL) “Darren Arvin Singh” lists 6900 132nd PL SE Apt 5-405 Newcastle, WA as his residence on his Washington driver’s license. Initially, TT2 did not appear to move from the area of the aforementioned address until December 26, 2018. I believe this indicated that Singh had traveled somewhere and had left TT2 behind.

16. On December 26, 2018, investigators received notification from U.S. Customs and Border Protection (CBP) that Darren Singh had crossed into the U.S. from Canada. CBP stated that Singh had stated to CBP he was residing at 6900 132nd PL SE Apt 5-405 Newcastle, WA, and provided 206-430-8643 (TT1) as his phone number to CBP. Upon Singh’s return from Canada, TT2 began to “ping” at locations other than Singh’s suspected residence, indicating the user had begun to carry it around with them. As stated above, TT2 was only “pinging” near the Newcastle address initially and was not with Singh during his border crossing from Canada based on state tracking data.

17. During the first week of January 2019, CS1 stated to investigators that Singh had contacted him/her via phone and had stated to CS1 that he was ready to complete the previously arranged narcotics transaction. On the same date, during the first week of January 2019, at approximately 11:45 a.m., investigators established surveillance in the area of TT2. Electronic tracking data for TT2 showed TT2 was “pinging” near a restaurant, located in Tukwila, WA. Upon arrival in the area of the “ping,” investigators located a 2004 Honda Accord Sedan with Washington License plate ANV4168 (herein after “Target Vehicle 1” or “TV1”) which investigators previously had observed Singh driving during this investigation. CS1, at the direction of law enforcement, then met with Singh in a public location. The meeting was observed by law enforcement.

---

[3] Tracking data ranged from within 2 meters up to within 28 meters of the aforementioned address.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

After the meeting, CS1 stated that Singh had stated to him/her that the narcotics were in another car that was nearby, waiting for Singh to call. These conversations were relayed by CS1 to investigators. The conversations were not recorded and investigators were not present to hear them. CS1 stated that he/she had told Singh he/she would be ready later in the day. CS1 stated that he/she and Singh had agreed to meet later in the day at a Casino, located in Tukwila WA, between 2:30 p.m. and 3:00 p.m. to complete the narcotics transaction.

18. At approximately 11:58 a.m., investigators observed Singh meeting with an unidentified Hispanic male (UM1) in a Best Buy parking lot, located at 17364 Southcenter Parkway, Tukwila, WA. Singh had traveled to the Best Buy in TV1.

19. At approximately 12:01 p.m., Singh and UM1 separated. Investigators observed UM1 enter into the Best Buy and Singh depart the area in TV1. At approximately 12:14 p.m., investigators observed UM1 enter into a Kia sedan with Washington license plate ARP9660 after UM1 had exited the Best Buy. The Kia then departed the area. At approximately 12:48 p.m., investigators located the Kia sedan at Southcenter mall on the top floor of a parking garage. Surveillance was maintained on the Kia. According to Washington DOL the Kia is registered to "Camilo Castano."

20. Based on my training and experience, CS1's information that Singh stated to him/her the narcotics were in another vehicle nearby waiting for Singh to call, CS1's statements that Singh had agreed to meet him/her later in the day to complete the narcotics transaction, and the training and experience of other investigators more senior than I, I believe that UM1 was in possession of the narcotics CS1 was "ordering" through Singh. I and senior investigators further believe that Singh was meeting with UM1 to inform him that the narcotics transaction would happen later in the afternoon.

21. At approximately 2:00 p.m., investigators observed CS1 and Singh together at a public parking lot. The CS was not wearing a recording device during this time. During breaks in the meeting between CS1 and Singh, CS1 relayed to investigators that Singh had called the individual delivering the narcotics and instructed him to go to a

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

nearby Jack in the Box to conduct the transaction. At approximately 2:17 p.m., investigators observed UM1 enter the Kia and depart the parking garage. Investigators maintained surveillance on the Kia. At approximately 2:25 p.m., an investigator observed the Kia arrive at a Jack in the Box restaurant located at 16400 W Valley Hwy, Tukwila, WA. Shortly thereafter, the Kia departed the Jack in the Box without meeting with any individuals. Several minutes later, the Kia drove to a Value Village, located at 16700 Southcenter Parkway, Tukwila, WA. This location is adjacent to a Double Tree hotel. At this approximate time, CS1 informed investigators, via phone, that the meet location changed to the Double Tree.

22. At approximately 2:40 p.m., UM1 was observed at the trunk of the Kia in the Value Village parking lot by investigators. Seattle Police Department (SPD) officers then detained UM1 at the trunk of the Kia. UM1 was identified as Camilo Castano-Villegas. After Castano-Villegas was detained investigators observed his phone ringing. The number displayed was 253-226-1137 (TT2).

23. Castano-Villegas was read his Miranda Warnings by investigators and stated he understood them to investigators. Castano-Villegas then signed a consent to search of his vehicle. Investigators searched his vehicle while he was present and located approximately four kilograms of MDMA within the Kia. Investigators later field tested the narcotics with positive results for MDMA.

**B. Further information regarding TT1**

24. On January 25, 2019, King County Superior Court Judge Patrick Oishi signed a state tracking warrant authorizing the real time GPS location tracking of TV1. On February 7, 2019, the Honorable U.S. Magistrate Judge Mary Alice Theiler signed a federal warrant authorizing real-time location tracking of TT1. On March 8, 2019, the Honorable U.S. Magistrate Judge Mary Alice Theiler signed a federal warrant authorizing the continued real-time location tracking of TT1 and TV1.

UNITED STATES ATTORNEY
700 Stewart Street, Suite 5220
Seattle, Washington 98101
(206) 553-7970

25. I and senior investigators believe both TT1 and TT2 are utilized by Darren Singh. Washington State Department of Revenue indicates that the subscriber for TT1: "Executive Transportation and Services" is the name of a business that was governed by "Darren Singh." The business license for Executive Transportation and Services expired on April 30, 2017, becoming inactive during September 2017. In addition, as mentioned above, Singh provided TT1 as a contact number upon returning to the U.S. from Canada.

26. Based on my training and experience, and the training and experience of other investigators more senior than I, it is common for narcotics traffickers to utilize more than one phone. At times, narcotics traffickers will utilize separate phones for multiple reasons which include using one phone for trusted individuals, and another for those who the trafficker believes can't be trusted. In addition, at times traffickers will segregate phones for "business" (trafficking in narcotics) and use a separate phone for friends and family.

**C. Information gained during tracking of TV1**

27. During the first week of February 2019, after the aforementioned seizure of MDMA, CS1 met with Singh. Singh traveled to the meeting in TV1. Prior to the meeting, investigators equipped CS1 with a recording device. I have reviewed that recording. During the meeting, Singh stated to CS1 that "these guys don't want to send to me." Singh continued that, "if I need it, I have to pick it up in Cali." Singh further indicated that he didn't want to fly to California stating, "if they look at my records what am I doing there?" Singh instead indicated he may have to drive to California.

28. Based on my training and experience, and the training and experience of other investigators more senior than I, I and senior investigators believe when Singh stated his "guys" didn't want to send to him, he was indicating to CS1 that his suppliers would not currently send him narcotics, possibly due to the recent MDMA seizure. I and senior investigators further believe Singh was instructed by his suppliers that he would have to drive to California to pick up narcotics. In addition, when Singh inquired, "if

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

they look at my records what am I doing there?", myself, and other investigators more senior than I, believe he was indicating he was aware that law enforcement may be paying attention to his movements and instead preferred to travel by car in an effort to thwart law enforcement.

29. CS1 and law enforcement databases indicate Singh is part of a larger organization which traffics narcotics from Mexico, through the U.S., to Canada. As stated previously, CS1 has purchased up to several kilograms of MDMA from Singh, and stated Singh generally has access to 10 kilograms of MDMA at any given time. CS1 said Singh drives to Canada and he and his associates then smuggle MDMA into the United States from Canada. CS1 believes Singh and his drug trafficking organization smuggle 10 to 20 kilograms of MDMA into the United States on each run, but he/she was unsure of how frequent the runs were. Our investigation to date has indicated that Singh is supplied his MDMA from Canadian sources.

30. In addition to narcotics activity, myself, and other investigators more senior than I, further believe Singh is laundering money through casinos in Western Washington. On February 18, 2019, state electronic tracking data indicates that TV1 traveled to the Macau casino located at 5700 Southcenter Blvd, Tukwila, WA. For this specific date, we also obtained electronic security footage from the Macau casino. At approximately 4:27 p.m., TV1 can be seen arriving at the casino and parking. Singh then exits TV1 on his phone and appears to be looking around the area. Singh then walked over to a dark vehicle at a nearby gas station and spoke with the driver of the car for a few minutes. The vehicle then departed the area and Singh walked back to TV1 and entered TV1.

31. At approximately 4:35 p.m., Singh entered the Macau casino. Inside the casino Singh then "bought in" to table games with large bundles of money. Exact dollar amounts currently have not been obtained and could not be discerned from the camera footage however Singh was in the casino for approximately 1 hour, during this time he switched tables multiple times, and appeared to buy in with large bundles of money

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

approximately 5 times. On the same date, at approximately 5:58 p.m., Singh also traveled in TV1 to nearby Roman casino after he played at the Macau casino. For this specific date, we also obtained electronic security footage from the Roman casino. While at Roman, he also appeared to buy in (though only once) with a larger bundle of bills before playing a few hands, taking his chips, and appearing to "cash out."

32. Based on my training and experience, and the training and experience of other investigators more senior than I, Singh's meeting with the individual at the gas station prior to entering Macau casino appeared to be consistent with a "money pickup" where an individual will "pickup" a large amount of narcotics proceeds and be expected to launder the money either through banks, crypto-currency, or by other means including casinos. In addition, Singh's behaviors inside the Macau and Roman casino are consistent with money laundering. Traffickers at times will utilize narcotics proceeds inside casinos in an effort to get "clean" bills by exchanging the narcotics proceeds for chips, playing a few hands, and then "cashing out" with new "clean" bills.

33. Finally it should be noted that we have observed Singh on security cameras at multiple casinos over a period of four days between February 15th and February 18, 2019. During this time, when Singh was gambling, he appeared to mostly "buy in" for at most $500-$1000 (five to ten "bills" were observed counted out by the dealer). The instances at the Macau and Roman casinos on February 18, 2019, appeared to be different behavior based on the amount of times Singh "bought in" as well as the larger bundles he appeared to be utilizing. Based on tracking data and surveillance, Singh travels to casinos nearly daily in TV1. While at times he appears to be legitimately gambling, on other instances his behaviors are consistent with money laundering activity.

**D. Information relating to usage of TT2**

34. As noted above, prior to and during the seizure of MDMA, Singh spoke with CS1 by utilizing TT2. For the period of December 1, 2018 through January 7, 2019, toll analysis indicates that TT2 was in contact with 30 unique full phone numbers. For

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

the same time period, TT2 was in contact with seven (7) unique full phone numbers 10 or more times. This is notable because it shows TT2's phone activity through the first week of January 2019 (prior to the MDMA seizure).

35. From February 7, 2019 through March 17, 2019 (the last date available for review), toll analysis indicated that TT2 was in contact with eight (8) unique full phone numbers. For the same time period, TT2 was in contact with only one (1) full phone number more than 10 times. This is notable because it shows TT2's phone activity beginning approximately one (1) month after the MDMA seizure. Myself, and other investigators more senior than I, believe that the fact that TT2 is only speaking with one phone number frequently indicates that Singh has transitioned from TT2 to another phone.

36. Further, based on my training and experience, and the training and experience of other investigators more senior than I, traffickers will at times transition to another (or new) phone after law enforcement activity. Usually, this process can range from a few days to even months while the user of the phone (in this case TT2) purchases a new phone and notifies all the individuals they were previously talking to about their new phone number(s). Furthermore, this process can also take (at times) a few months due to the transitioning of contact information (and other information on the phone) from the phone no longer being utilized to the new suspected phone. In addition, out of the aforementioned seven (7) full phone numbers, that were in contact with TT2 ten or more times, prior to the MDMA seizure, only two (2) full phone numbers have appeared in toll records for TT1. I believe this further supports that Singh has transitioned to another (or new) phone.

**E. Information relating to Singh's residence**

37. As noted above, Singh provided 6900 132nd PL SE Apt 5-405 Newcastle, WA as his residence upon returning to the United States from Canada to CBP Officials. In addition, the same address appears on Singh's Washington State driver's license. During the state tracking authorization for TT2 and TV1, TT2 and TV1 have frequently

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"overnighted" in the vicinity in the aforementioned address. Subpoena records indicate that TT1 is subscribed at 6900 132nd PL SE Apt 5-405 Newcastle, WA. Furthermore, TV1 has been observed multiple times by investigators parked at 6900 132nd PL SE, Newcastle, WA. Finally, investigators have also observed Singh entering into the apartment complex multiple times. I believe all of the aforementioned information indicates that Singh lives at 6900 132nd PL SE Apt 5-405 Newcastle, WA.

38. Based on my training and experience, and my discussions with other experienced officers and agents involved in drug investigations, I know it is common for drug dealers to secrete contraband, proceeds of drug sales, and records of drug transactions in secure locations within their vehicles, residences, and/or storage units for their ready access and to conceal them from law enforcement. In addition, drug trafficking is a cash business, and in order to escape notice from authorities for using unexplained income, or hide excessive cash from illegal activities, traffickers either keep large quantities of cash at home or other secure locations, such as safe deposit boxes, or convert the cash into other valuable assets, such as jewelry, precious metals, monetary instruments, or other negotiable forms of wealth. Records of such conversions are often stored where a trafficker lives or in other secure locations such as safe deposit boxes. I also believe it is likely that any new phones utilized by Singh are stored at his address. For this reason, I am also requesting the investigative technique (described in Attachment B) is able to be utilized at 6900 132nd PL SE Apt 5-405 Newcastle, WA.

## V. AUTHORIZATION REQUEST

39. Based on the foregoing, I request that the Court issue the proposed search warrant authorizing the use of the investigative technique described in Attachment A, pursuant to Federal Rule of Criminal Procedure 41. The proposed warrant also will function as a pen register order under 18 U.S.C. § 3123. I know, based on my training and experience, and the training and experience of investigators more senior than I, that experienced and sophisticated drug traffickers like Darren Singh use multiple cellular phones to conduct their business, and often change phones in an attempt to frustrate law

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

enforcement. While we have identified phones for Singh, there is probable cause to believe that he is also using one or more additional cellular phones to conduct his drug and/or money laundering activities. Use of this technique will likely permit investigators to identify these additional, currently unknown phones.

40. To facilitate execution of this warrant, law enforcement may use an investigative device that sends signals to nearby cellular devices, including **Target Telephone A**, and in reply, the nearby cellular devices will broadcast signals that include their unique identifiers. The investigative device may function in some respects like a cellular tower, except that it will not be connected to the cellular network and cannot be used by a cell to communicate with others. Law enforcement will use this investigative device for a period of thirty days from the date the warrant is signed. Law enforcement will use this investigative technique when they have reason to believe that Singh is present. Law enforcement will collect the identifiers emitted by cellular devices in the immediate vicinity of the **Target Telephone A** when the subject is in multiple locations and/or multiple times at a common location and use this information to identify **Target Telephone A** as only the **Target Telephone A**'s unique identifiers will be present in all or nearly all locations. Once investigators ascertain the identity of the **Target Telephone A**, they will cease using the investigative technique. Because there is probable cause to determine the identity of **Target Telephone A** there is probable cause to use the investigative technique described by the warrant to determine the identity of **Target Telephone A**

41. The investigative device may interrupt cellular service of cellular devices within its immediate vicinity. Any service disruption will be brief and temporary, and all operations will attempt to limit the interference of cellular devices. Once law enforcement has identified **Target Telephone A** it will delete all information concerning non-targeted cellular devices. Absent further order of the court, law enforcement will make no investigative use of information concerning non-targeted cellular devices other than distinguishing the **Target Telephone A** from all other devices.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

42. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to identify **Target Telephone A** outside of daytime hours.

43. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 90 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the person carrying **Target Telephone A** would seriously jeopardize the ongoing investigation, as such as a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

44. I further request that the Court authorize execution of the warrant at any time of the day or night, owing to the potential need to identify **Target Telephone A** outside of daytime hours.

45. I further request that the Court order that all papers in support of this application, including the affidavit and search warrant, be sealed until further order of the Court. These documents discuss an ongoing criminal investigation that is neither public nor known to all the targets of this investigation. If prematurely disclosed to the public, notice to the holder of **Target Telephone A** could result in the target's flight from prosecution, destruction of or tampering with evidence, intimidation or retaliation against potential witnesses, and could otherwise seriously jeopardize the ongoing investigation. Accordingly, there is good cause to seal these documents because their premature disclosure may seriously jeopardize the investigation.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

46. A search warrant may not be legally necessary to compel the investigative technique described herein. Nevertheless, I hereby submit this warrant application out of an abundance of caution.

ALISON WASSALL
Special Agent, Drug Enforcement Administration

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 18th day of April, 2019.

BRIAN A. TSUCHIDA
U.S. Magistrate Judge

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A**

This warrant authorizes the use of the electronic investigative technique described in Attachment B when and where the officers to whom it is directed have reason to believe that Darren Singh is present, including but not limited to the following location(s):

6900 132nd PL SE Apt 5-405 Newcastle, WA

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B**

The "Target Telephone A" is the cellular device or devices carried by Darren Singh. Pursuant to Federal Rule of Criminal Procedure 41 and Title 18§USC 3123, and pursuant to an investigation of Violation of Title 21§USC 841 and /or Title 21§USC 846, this warrant authorizes the officers, to whom it is directed to identify the Target Telephone A by collecting radio signals, including the unique identifiers, emitted by the Target Telephone A and other cellular devices in its vicinity for a period of thirty days from the date the warrant is signed, during all times of day and night.

Absent further order of a court, law enforcement will make no affirmative investigative use of any identifiers collected from cellular devices other than the Target Telephone A, except to identify the Target Telephone A and distinguish it from the other cellular devices. Once investigators ascertain the identity of the Target Telephone A, they will end the collection, and any information collected concerning cellular devices other than the Target Telephone A will be deleted.

This warrant does not authorize the interception of any telephone calls, text messages, or other electronic communications, and this warrant prohibits the seizure of any tangible property. The Court finds reasonable necessity for the use of the technique authorized above. *See* 18 U.S.C. § 3103a(b)(2).

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT C**

***DECLARATION***

I, S. KATE VAUGHAN, do declare and say:

I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

To ensure technical compliance with the Pen Register Statute, 18 U.S.C. §§ 3121-3127, this warrant also functions as a pen register order. Consistent with the requirement for an application for a pen register order, I certify that the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by DEA. *See* 18 U.S.C. §§ 3122(b), 3123(b).

I declare under penalty of perjury that the Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

*s / S. Kate Vaughan*
S. KATE VAUGHAN
Assistant United States Attorney

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970